**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **FRACTUS, S.A.,** | § | |
| | § | |
| | § | **Civil Action No.  2:22-cv-00412-JRG** |
| v. | § | **(Lead Case)** |
| | § | |
| **ADT LLC d/b/a ADT SECURITY** | § | Jury Trial Requested |
| **SERVICES** | § | |

| | | |
|---|---|---|
| **FRACTUS, S.A.,** | § | |
| | § | |
| | § | **Civil Action No.  2:22-cv-00413-JRG** |
| v. | § | **(Member Case)** |
| | § | |
| **VIVINT, INC.** | § | Jury Trial Requested |
| | § | |

**PLAINTIFF FRACTUS, S.A.'S MOTION TO COMPEL RESPONSES TO FRACTUS'S
INTERROGATORY NO. 11**

████████████████████████████████

Fractus has accused Defendants ADT, LLC and Vivint, Inc. ("Defendants") of selling products incorporating Fractus's patented antenna designs as part of their subscription security and monitoring systems. In other words, Defendants sell or provide hardware including the accused antennas to their customers, and then they charge those customers subscription fees for services that use the accused antennas. Fractus's Interrogatory No. 11 thus seeks financial information regarding the subscription component of these systems.  Defendants have refused to provide any information outside of their public financial filings.  Because this information is relevant to Fractus's damages in these suits and because any burden is low in view of Defendants' statements confirming that they keep a close eye on their subscription businesses, this Court should grant Fractus's motion and order Defendants to respond to Fractus's Interrogatory No. 11.

## I.        Background

Fractus filed these suits for patent infringement against Defendants on October 21, 2022. *See* Complaint, 22-cv-412, ECF No. 1; Complaint, 22-cv-413, ECF No. 1.  Fractus accuses Defendants of infringing Fractus' patents relating to novel antenna designs for wireless and cellular communication devices via antennas included in their security panels, add-on modules, and car monitoring devices offered as part of their home, car, and business monitoring and security systems. *See, e.g.,* Complaint, 22-cv-412, ECF. No. 1 at ¶¶ 12–21.

### A.   Defendants Tout their Integrated Hardware-Services Offerings

*a.   Vivint:*

Vivint's 2021 Annual Report states that "[Vivint] offers [its] customers smart home services combining Products, including [its] proprietary Vivint smart hub control panel, door and window sensors, door locks, cameras and smoke alarms; installation; and a proprietary backend cloud platform software and Services. *These together create an integrated system* that allows our

customers to monitor, control, and protect their home." Vivint 2021 10-K at p. 53 (https://www.sec.gov/ix?doc=/Archives/edgar/data/1713952/000171395222000007/ck00017139 52-20211231.htm) (last accessed, June 28, 2023) (emphasis added). That "integrated Smart Home business model generates subscription-based, high-margin recurring revenue from subscribers who sign up for our smart home services." *Id.* at 47. Vivint lists "Total Subscribers" as one of its "key metrics." *Id.* Vivint states that its products and services are "integrated and highly interdependent," and that "installed [p]roducts, related installation and [s]ervices contracted for by the customer are generally not distinct . . ." *Id.* at 53. Vivint's websites tout the integration of its hardware and monitoring services. Vivint states that the "Smart Hub" (one of the Accused Products in this case) "uses modern *cellular technology to keep all the information and statistics from your smart devices securely at your fingertip control*" and immediately follows this section with "[a] basic home monitoring package with Vivint includes the 24 x 7 x 365 live service and one touchscreen panel to ensure total, personal control of your home and family's safety." *See* "The Future of Home Automation and Monitoring has Already Arrived," *Vivint.com* (May 02, 2016) (https://perma.cc/TG72-5NZH) (emphasis added). Websites for Vivint retailers sell packages for "Smart [] Monitoring" at a variety of price points and confirm that "Vivint Home Automation" provides "24/7 monitoring . . . [and] [r]emote access and control from [the] Vivint Smart Hub," an Accused Product in this case. *Vivintsource.com* (https://perma.cc/8Y3N-LZME).

### b.  ADT:

ADT's 2022 Annual Report states that "[t]he vast majority of new residential customers choose our automation and smart home solutions, which provide customers the ability to remotely monitor and manage their environments through our customized web portal via . . . touchscreen panels in their homes" and "[a]t the time of initial equipment installation, [ADT's] CSB and

████████████████████████████

Commercial customers typically contract for both monitoring and maintenance services . . ." ADT 2022 10-K at pp. 8–9 (https://perma.cc/WA9J-TFX5).   ADT lists numerous subscription metrics as "Key Performance Indicators," including "contractual recurring fees for monitoring . . . and [g]ross customer revenue attrition . . . defined as [contractual recurring fees for monitoring] lost as a result of customer attrition . . ." *Id.* at 57.  ADT offers equipment-services bundles and confirms that "the ADT Command system uses cellular networks to communicate with monitoring centers, so a landline isn't required."  *See* "FAQs" *Adt.com* (https://perma.cc/5XYK-Z8JN).  In response to the question "[c]an I use ADT-monitored equipment without a monitoring service," ADT states that "[a]ll previously-installed ADT equipment requires the purchase or reactivation of a monitoring service." *ADTSecurity.com* (https://perma.cc/B42J-X5N2?type=image).

### B.  Fractus's Common Interrogatory No. 11

Fractus served its first set of common interrogatories on Defendants on March 24, 2023. As relevant here, Fractus's Common Interrogatory No. 11 states:

> For each Accused Product, on a monthly basis beginning with the first sale of each Accused Product, identify each subscription service offered by You in conjunction with the Accused Product and provide (a) the number of United States-based users of each subscription service; (b) the revenue received from each subscription service in the United States; (c) a complete description of all costs incurred in providing each subscription service in the United States, including the amounts of the costs incurred; and (d) the gross profits, contribution profits, operating profits, and net profits generated from the provision of each subscription service in the United States.

Both ADT and Vivint responded to this interrogatory by claiming, *inter alia*, that they do not offer subscription services ████████████████████   *See* Ex. 1 at 1–4.  Defendants also objected that, because the patents-in-suit concerned antennas, financial information regarding Defendants' monitoring services was not relevant to any of the claims in suit.  *See id.*

███████████████████████████

On May 19, 2023, Fractus sent a letter to Defendants objecting to the deficiencies in Defendants' responses and detailing the relevance of the information sought by Interrogatory No. 11.  Both ADT and Vivint responded to this interrogatory by claiming, *inter alia*, that they do not offer subscription services ████████████████  *See* Ex. 1 at 1–4.  The parties met and conferred on May 31, 2023, and lead and local counsel for the parties conducted a further meet and confer on June 6, 2023.  At the meetings, Defendants' counsel confirmed that Defendants maintain financial information regarding their subscription services, but refused to provide information beyond summaries contained in their public financial filings, asserting that it was not relevant and that the burdens of collection outweighed any relevance.[1]

## II.    Legal Standards

Under Federal Rule of Civil Procedure 33(a)(2) "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." In evaluating discovery requests, Courts are to "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

*Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) set out factors relevant to calculating reasonable royalty in patent infringement suits, including:

- Factor 6: "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;"

- Factor 9: "the advantages of the patent property over old modes or devices that had been used for working out similar results;"

---

[1] Defendants have since served Supplemental Responses to Fractus's Interrogatories which do not alter Defendants' answers to Fractus's Interrogatory No. 11.

- Factor 11: "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;"

- Factor 15: "the amount which a prudent licensee … would have been willing to pay as a royalty, and yet be able to make a reasonable profit." *Id.* at 1120.

## III.    Argument:

Fractus alleges that Defendants' use of Fractus's patented antenna designs in the Accused Products is crucial to many of Defendants' lucrative subscription-based security monitoring systems. Defendants' own public financial filings and marketing materials confirm that performance of their subscription monitoring businesses is a key indicator of their financial health and that subscription services are sold along with, and using, the Accused Products as part of an integrated system. And Defendants' possession of the financial information requested by Interrogatory No. 11 means that any burden imposed is minimal.

### A.    The Information Sought by Interrogatory No. 11 is Relevant to Fractus's Damages in These Cases.

The information sought by Interrogatory No. 11 is relevant to Fractus's damages in these cases, at least under *Georgia-Pacific* Factor 6 as to the appropriate royalty rate, or as convoyed sales and part of the royalty base, and under *Georgia-Pacific* Factor 11. As Defendants' own statements confirm, their business <u>is</u> selling an integrated hardware-services offering which uses antennas to enable cellular monitoring. Numerous cases from this and other districts confirm that financial information regarding services sold alongside accused products is both relevant and discoverable. *See, e.g., Sycamore IP Holdings LLC v. AT&T Corp.,* No. 2:16-CV-588-WCB, 2017 WL 3719978, at *2 (E.D. Tex. May 22, 2017) (ordering defendant to respond to interrogatory seeking sales and financial information regarding products which did not practice the accused method because "[d]efendant sells products and services that incorporate [the accused products]"

and "[t]herefore . . . service-level revenue information [is needed] to quantify the profits [Defendant] realizes from the sales of services that perform the accused [method].") (internal quotation marks omitted); *id.* ("[Plaintiff] correctly notes that information regarding sales and pricing is key to determining the value of the patented method to [Defendant] and is the starting point of any damages analysis.") (internal quotation marks omitted); *Via Vadis, LLC v. Blizzard Ent., Inc.*, No. 1:14-CV-00810-LY, 2021 WL 3081310, at *5 (W.D. Tex. July 21, 2021) (ordering defendant to respond to interrogatories and requests for production seeking subscriber financial information under *Georgia-Pacific* factor 6); *Infinity Computer Prod., Inc. v. Epson Am., Inc.*, No. CV1802532RGKRAOX, 2018 WL 7890859, at *2 (C.D. Cal. Dec. 14, 2018) (ordering defendants to respond with sales data regarding collateral products); *cf., e.g., Sprint Commc'ns Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 979 (Fed. Cir. 2019) (upholding damages award apportioning damages to patented features on a per-subscriber-per-month basis).

This information is also relevant as evidence of *Georgia-Pacific* Factor 9 as to the advantages supplied by Fractus's antenna designs, and *Georgia-Pacific* Factor 15 as to the amount which a prudent licensee would have been willing to pay while maintaining a reasonable profit. *See Adaptix v. T-Mobile USA, Inc.*, Order, ECF 145 at 4, No. 6:13-cv-00049-MHS-CMC (E.D. Tex. July 21, 2014) (Craven, M.J.) (granting motion to compel production of revenue per user of cell network where accused products were base stations used in network operation).

To be sure, Defendants may claim at some point that Fractus's damages approach is improper, and damages should be limited to the accused antennas. Although this argument is without merit, now is not the time to make it. Fractus deserves this discovery at this stage in the proceedings because the discovery meets the minimum threshold of relevance. Defendants can make a *Daubert* or summary-judgment motion later to challenge Fractus's damages theories.

6

████████████████████████████████

### B.      Any Burden is Slight and Outweighed by the Information's Relevance.

In response to the above, Defendants' counsel stated that Defendants do not maintain financial information in a way easily permitting attribution of service revenues to accused products and that compiling the information even absent such attribution would be overly burdensome.

First, Defendants' claimed burdens are assessed relative to the importance of the information to these cases. *See* Fed. R. Civ. P. 26(b)(1). As shown above, this information is highly relevant to Fractus's damages case. *See Sycamore IP*, 2017 WL 3719978, at *2 (describing financial information regarding services as "the starting point of any damages analysis.") (internal quotation marks omitted). Any claimed burden is thus outweighed by the relevance and Fractus's need for the information. *Id.*; *see* Fed. R. Civ. P 26(b)(1).

Second, even granting Defendants' claims regarding the difficulty of attribution, Fractus made clear in the meet and confer that Defendants could have produced the financial information regarding their subscription monitoring services without such an attribution (leaving it to the experts to perform any attribution). Yet Defendants still refused to provide any non-public financial information regarding their subscriber businesses, instead pointing Fractus to documents containing unit sales of the Accused Products. But sales of the Accused Products themselves are only one piece of the value Defendants have realized from any infringement; services are a crucial component too. *See, e.g., Sycamore IP*, 2017 WL 3719978, at *2. The fact that Defendants themselves tout these financial metrics in their annual reports suggests that the information is readily available to both Defendants. *See, e.g., Adaptix,* Order, ECF 145 at 5–6.

### IV.    Conclusion

This Court should grant Fractus's Motion to Compel and require Defendants to respond to Interrogatory No. 11, including by producing the documents underlying any answer, in full.

███████████████████████

Dated: June 28, 2023                                Respectfully submitted,

                                                   By: */s/ Max L. Tribble*
                                                   Max L. Tribble
                                                   TX State Bar No. 20213950
                                                   mtribble@susmangodfrey.com
                                                   Joseph Grinstein
                                                   TX State Bar No. 24002188
                                                   jgrinstein@susmangodfrey.com
                                                   Justin A. Nelson
                                                   TX State Bar No. 24034766
                                                   jnelson@susmangodfrey.com
                                                   Adam Tisdall
                                                   Texas State Bar No. 24106885
                                                   atisdall@susmangodfrey.com
                                                   **SUSMAN GODFREY L.L.P.**
                                                   1000 Louisiana, Suite 5100
                                                   Houston, TX 77002-5096
                                                   Telephone: (713) 651-9366
                                                   Facsimile: (713) 654-6666

                                                   Genevieve Vose Wallace
                                                   gwallace@susmangodfrey.com
                                                   **SUSMAN GODFREY L.L.P.**
                                                   1201 Third Avenue
                                                   Suite 3800
                                                   Seattle, WA 98101
                                                   Telephone: 206-516-3880

                                                   J. Craig Smyser (*pro hac vice*)
                                                   TX State Bar No. 24117083
                                                   csmyser@susmangodfrey.com
                                                   **SUSMAN GODFREY L.L.P.**
                                                   1301 Avenue of the Americas, 32nd Floor
                                                   New York, NY 10019
                                                   Telephone: (212) 729 2023

                                                   S. Calvin Capshaw
                                                   TX State Bar No. 03783900
                                                   ccapshaw@capshawlaw.com
                                                   Elizabeth L. DeRieux
                                                   TX State Bar No. 05770585
                                                   ederieux@capshawlaw.com
                                                   **CAPSHAW DERIEUX, L.L.P.**
                                                   114 East Commerce Avenue

Gladewater, TX  75647
Telephone: (903) 845-5770

T. John Ward, Jr.
TX State Bar No. 00794818
jw@wsfirm.com
Claire Abernathy Henry
TX State Bar No. 24053063
claire@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
P.O. Box 1231
Longview, TX 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**ATTORNEYS FOR FRACTUS, S.A.**

██████████████████████████

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has

been served on all counsel of record via email on June 28, 2023.

*/s/ J. Craig Smyser*
J. Craig Smyser

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document is being filed under seal pursuant to the

Protective Order entered in this matter.

*/s/ J. Craig Smyser*
J. Craig Smyser

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certify that counsel for the parties have complied with Local Rule CV-7(h). In addition to informal conferences, the parties engaged in a lead and local meet and confer phone call concerning the subject matter of this motion on June 6, 2023. Counsel present on this call included: Max Tribble, Claire Henry, Craig Smyser, Adam Tisdall, Michael Eric Zeliger, David R. Wright, Ranjini Acharya, Andy Tindel, and Jared J. Braithwaite.

At the June 6 meet and confer, counsel for Fractus requested that Defendants provide a substantive response to Fractus's Interrogatory No. 11.  Defendants' counsel confirmed that Defendants maintain financial information regarding their subscription services, but refused to provide information beyond summaries contained in their public financial filings.  Defendants' counsel asserted that this information was not relevant, that the financial information was not maintained in a manner permitting attribution of subscription revenue to accused products, and that the burdens of collection outweighed any relevance.  The parties are at an impasse.

*/s/ Max L. Tribble*
Max L. Tribble

*/s/ Claire Abernathy Henry*
Claire Abernathy Henry

11