# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FRACTUS, S.A.,<br><br>    *Plaintiff*,<br><br>v.<br><br>ADT LLC,<br><br>    *Defendant*. | § § § § § § § § § § § | **CIVIL ACTION NO. 2:22-CV-00412-JRG**<br>**(LEAD CASE)** |
| FRACTUS, S.A.,<br><br>    *Plaintiff*,<br><br>v.<br><br>VIVINT, INC.,<br><br>    *Defendant*. | § § § § § § § § § § § | **CIVIL ACTION NO. 2:22-CV-00413-JRG** |

## MEMORANDUM OPINION AND ORDER

Before the Court is Fractus, S.A.'s ("Fractus") Motion to Compel Responses to Fractus's Interrogatory No. 11 (the "Motion"). (Dkt. No. 53.) In the Motion, Fractus seeks to compel additional responses to its Interrogatory No. 11 from Defendant ADT LLC ("ADT") and Defendant Vivint, Inc. ("Vivint") (collectively, "Defendants"). (*Id.*) Having considered the Motion and the subsequent briefing, the Court is of the opinion that the Motion should be and hereby is **GRANTED**. Fractus's Unopposed Motion for Oral Hearing regarding this Motion (Dkt. No. 71) is **DENIED AS MOOT**.

## I. BACKGROUND

On October 21, 2022, Fractus sued Defendants for patent infringement. (Dkt. No. 1); (No. 2:22-cv-413 Dkt. No. 1.) Defendants sell home, car, and business security systems and

subscription-based security services. (*Id.*) Fractus alleges that Defendants' security panels include antennas that infringe Fractus's patents covering antenna designs. (*Id.*) The subscription services offered by Defendants are not accused in this case.

Fractus served its first set of interrogatories on Defendants on March 24, 2023. Fractus's Interrogatory No. 11 states:

> For each Accused Product, on a monthly basis beginning with the first sale of each Accused Product, identify each subscription service offered by You in conjunction with the Accused Product and provide (a) the number of United States-based users of each subscription service; (b) the revenue received from each subscription service in the United States; (c) a complete description of all costs incurred in providing each subscription service in the United States, including the amounts of the costs incurred; and (d) the gross profits, contribution profits, operating profits, and net profits generated from the provision of each subscription service in the United States.

(Dkt. No. 53 at 3.)

### A. Vivint's Response to Fractus's Interrogatory No. 11

Vivint objected to Interrogatory No. 11 on the basis that it requests an identification of subscription services offered "in conjunction with" the accused products. (Dkt. No. 57 at 2.) Vivint contends that it does not offer subscription services tied to any of its specific products. (*Id.*) Rather, Vivint alleges that it offers a general subscription service, that may be used with all of Vivint's products, not just the accused products in this case. (*Id.*)

Despite these objections, Vivint responded to subparts (a)-(d) of the interrogatory by pointing to information contained in Vivint's public financial filings. (*Id.* at 3.) For example, Vivint's public financial filings state (a) that Vivint had 1,924,600 subscribers in 2022; (b) that the total monthly service revenue (MSR) for its subscription services was $89,935,000; and (c) that Vivint's total costs in 2022 equaled $1,610,946,000 and the net service costs per subscriber equaled $9.68. (*Id.*) Vivint also contends that the information related to Vivint's profits in subpart (d) of Interrogatory No. 11 can also be found in Vivint's financial statements. (*Id.*)

2

## B. ADT's Response to Fractus's Interrogatory No. 11

ADT also objected to Interrogatory No. 11 on the basis that it calls for a product-by-product breakdown of its subscription service revenue. (Dkt. No. 58 at 4.) ADT offers four subscription service tiers with its security panels, and the subscription fees are the same regardless of whether the panel uses an accused cellular antenna or an alternative. (*Id.* at 1.) ADT contends that it tracks certain revenue and cost information for its subscription services but does not track its subscription revenue and costs on a panel-by-panel model and configuration basis. (*Id.* at 2.) As such, ADT objected that it could not answer the interrogatory without performing a hypothetical apportionment analysis. (*Id.*) Like Vivint, ADT pointed to information in its public financial filings to answer the interrogatory but refused to provide any other response. (*Id.*)

## II. LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

## III. DISCUSSION

Fractus argues that Interrogatory No. 11 seeks relevant information. Fractus alleges that Defendants' the accused products are sold and used with the subscription services as part of that integrated security system, and as such, the subscription information is relevant at least with respect to the pricing of the accused products. (Dkt. No. 53 at 5.) Fractus argues that the

3

information sought by Interrogatory No. 11 is relevant to a damages analysis under the *Georgia-Pacific* Factors, including:

- Factor 6: "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;"

- Factor 9: "the advantages of the patent property over old modes or devices that had been used for working out similar results;"

- Factor 11: "[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;"

- Factor 15: "the amount which a prudent licensee … would have been willing to pay as a royalty, and yet be able to make a reasonable profit." Id. at 1120.

(*Id.* at 5-6) (citing *Georgia Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)). Fractus argues that Defendants may later challenge Fractus's damages approach in a *Daubert* or summary judgment motion based on the use of subscription revenue in the damages model, but Fractus argues that, at this stage of the case, Defendants' subscription services information meets the minimum threshold of discoverable evidence. (*Id.* at 6.)

Finally, Fractus argues that any burden on Defendants is slight and is outweighed by the information's relevance. (*Id.* at 7.) Fractus contends that there is no need to perform the product-by-product attribution that the Defendants have objected to as burdensome. According to Fractus, it would be acceptable for Defendants to produce "financial information regarding their subscription monitoring services without such an attribution (leaving the experts to perform any attribution)." (*Id.*)

Vivint argues it has already given Fractus all of the information that Fractus is entitled to. (Dkt. No. 57 at 3.) Specifically, Vivint argues that its public financial filings provide most of the information that the interrogatory seeks, and Vivint has "offered to supplement its response to

4

include such information." (*Id.*) Vivint also objects to the interrogatory as seeking irrelevant information since its subscription services are not accused in this case.

ADT similarly contends that Fractus is entitled to no more than what ADT has already produced. ADT argues that its public financial filings provide ADT's overall subscription revenues and costs, and that Fractus is not entitled to a burdensome hypothetical financial analysis connecting its subscription revenue to the accused products. (Dkt. No. 58 at 3.) ADT argues that such discovery is not relevant or proportional to the needs of the case. (*Id.*)

The Court finds that the information sought by Interrogatory No. 11 is relevant. Vivint and ADT do not dispute that their subscription services are sold with and used in conjunction with the accused products.[1] Defendants' service-level subscription revenue relates at the very least to the pricing of their products sold in conjunction with those services, such that this information meets the minimum threshold for discoverable evidence. *See Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 3719978, at *2 (E.D. Tex. May 22, 2017) ("[I]nformation regarding sales and pricing is key to determining the value of the patented [invention].") The Court agrees with Fractus that "Defendants can make a *Daubert* or summary-judgment motion later to challenge Fractus's damages theories." (*See* Dkt. No. 53 at 6.)

The Court also finds that Interrogatory No. 11 does not call for a product-by-product attribution as Defendants contend. Rather, the interrogatory seeks information on a subscription-by-subscription basis. For example, the interrogatory first asks the Defendants to identify each of

---

[1] Vivint and ADT dispute the semantics of the phrase "in conjunction with," arguing that their subscription services work with both the accused products and non-accused products. However, Vivint and ADT do not dispute that their services and products are sold and used together. (*See, e.g.,* Dkt. No. 57-1) ("We offer our customers smart home services combining Products . . . and a proprietary backend cloud platform software and Services. These together create an integrated system that allows our customers to monitor, control and protect their home"); (Dkt. No. 53 at 2) ("[t]he vast majority of new residential customers choose our automation and smart home solutions, which provide customers the ability to remotely monitor and manage their environments through our customized web portal via . . . touchscreen panels in their homes"). In this manner, Vivint and ADT's subscription services are sold "in conjunction with" their products.

5

their subscription services sold in conjunction with the Accused Products. Then, subpart (b) asks Defendants to provide "the revenue received *from each subscription service*[.]" Defendants could answer this interrogatory by identifying its subscription tiers and by disclosing for "each subscription [tier,]" the costs, revenues, profits, etc. Nothing in this question asks for the subscription revenue to be broken down on a product-by-product basis.

Further, Fractus does not contend that it is seeking a product-by-product attribution analysis. Rather, Fractus contends that "Defendants could have produced the financial information regarding their subscription monitoring services without such an attribution (leaving it to the experts to perform any attribution)." (Dkt. No. 53 at 7.) The Court finds that nothing in the interrogatory itself or in Fractus's Motion asks Defendants to perform the hypothetical attribution analysis that Defendants object to.

It is unclear from Vivint's response whether it offers one general subscription service or whether it offers subscription services in tiers.[2] ADT offers four subscription service tiers, but Fractus only has information related to "ADT's overall subscription revenues and costs." (Dkt. No. 58 at 4.) Neither Defendant is required to break down its subscription revenues, costs, profits, etc. on a product-by-product basis, but they must provide this information as to "each subscription service," i.e., on a subscription-by-subscription basis. To the extent that the public financial filings of Vivint and ADT do not identify the party's subscriptions and disclose the subscribers, revenues, costs, and profits on a subscription-by-subscription basis, those public filings are inadequate to properly respond to Fractus's Interrogatory No. 11.[3]

---

[2] Vivint explains in its brief that it "does not offer a service 'for each' accused product" but instead "offers the Vivint subscription service detailed on its website, which can be used with the accused products." (Dkt. No. 57 at 3.) It is unclear from this statement whether Vivint offers a singular subscription service or whether "the Vivint subscription service" includes multiple tiers similar to ADT's services.

[3] "Vivint offered to supplement its response to include such information," but it is unclear if it has already done so. To the extent that it has not, or to the extent that its supplement does not answer the interrogatory according to the Court's

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Motion to Compel Responses to Fractus's Interrogatory No. 11 (Dkt. No. 53.) Accordingly, the Court **ORDERS** Vivint and ADT to supplement their responses to Fractus's Interrogatory No. 11 to include the following information:

(1) an identification of each subscription service offered;

(2) "the number of United States-based users of each subscription" on a subscription-by-subscription basis;

(3) "the revenue received from each subscription service in the United States" on a subscription-by-subscription basis;

(4) "a complete description of all costs incurred in providing each subscription service in the United States, including the amounts of costs incurred" on a subscription-by-subscription basis; and

(5) "the gross profits, contribution profits, operating profits, and net profits generated from the provision of each subscription service in the United States" on a subscription-by-subscription basis.

In light of the above ruling, Fractus's Unopposed Motion for Oral Hearing regarding the Motion (Dkt. No. 71) is **DENIED AS MOOT**.

The parties are directed to jointly prepare a redacted version of this Order for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Order.

**So ORDERED and SIGNED this 14th day of December, 2023.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

reasoning (i.e., providing subscription revenues, costs, profits, etc. on a subscription-by-subscription basis), Vivint should so supplement its response.