# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **FRACTUS, S.A.,** <br><br> **Plaintiff,** <br><br> v. <br><br> **ADT LLC d/b/a ADT SECURITY SERVICES,** <br><br> **Defendant** | Case No. 2:22-cv-412-JRG <br> Jury Trial Requested |

**PLAINTIFF FRACTUS, S.A.'S MOTION TO COMPEL RESPONSES TO FRACTUS'S INTERROGATORY NO. 10 AND PRODUCTION OF DOCUMENTS REGARDING THE BENEFITS OF CELLULAR CONNECTIVTY TO ADT AND ITS CUSTOMERS**

██████████████████████████████████████

Fractus has accused Defendant ADT, LLC of offering products to consumers incorporating Fractus's patented antenna designs as part of their subscription security and monitoring systems. Despite having been served in March 2023 with an interrogatory requesting basic data regarding ADT's purchases and installations of the Accused Products, eleven months later ADT's responses and supplemental responses have repeatedly failed to provide this information. Fractus moves this Court to compel appropriate production and supplementation of purchase and installation data for the Accused Products as well as additional deposition time regarding the same.

Similarly, despite stating that ████████████████████████████

████████████████████████████████████████████████████████████

████████ Fractus located numerous public statements by ADT on its website and in its Annual 10K Reports discussing this very issue. ADT's response appears to be the incredible assertion that no one has ever discussed these issues internally and that these public statements (which were not produced to Fractus until Fractus uncovered them) miraculously came into existence without any written consideration within ADT.  As such, Fractus moves this Court to require ADT to perform a diligent search for documents discussing the benefits of cellular connectivity to consumers, to detail that search to the Court via a declaration submitted under the penalty of perjury, and to identify and produce for deposition the authors of the website and annual report statements regarding the benefits of cellular connectivity to ADT and its consumers.

I.      **Purchase & Install Data: Background & Interrogatory No. 10**

Served on March 24, 2023, Interrogatory No. 10 states:

> For each Accused Product, on a monthly basis beginning with the first sale of each Accused Product, provide (a) the number of units sold in the United States; (b) the revenue received from sales of the Accused Products in the United States; (c) a complete description of all costs incurred in providing the Accused Products in the United States, including the amounts of the costs incurred; and (d) the gross profits,

1

contribution profits, operating profits, and net profits generated from the provision of the Accused Products in the United States.

ADT's initial response ▮

Ex. 1 at 1. ADT supplemented its response on February 9, 2024 to state ▮ Ex. 1 at 1.

### A. ADT's Corporate Representative States the Purchase and Install Data Produced By ADT and Designated In Response to Interrogatory No. 10 Is Inaccurate

ADT produced additional documents in the days leading up to the February 16, 2024 deposition of its 30(b)(6) witness—Mr. Kenneth Pope—on these topics. Mr. Pope was designated to testify as to topic 1 of Fractus's 30(b)(6) notice, which closely mirrored Interrogatory No. 10. Given the importance of these issues to Fractus's case, much of this deposition was taken up with attempts to confirm which document(s) produced and/or designated by ADT contained (1) accurate purchase data and (2) accurate installation data.

*Purchase Data:* Beginning with purchase data, Mr. Pope was walked through each designated spreadsheet as well as those produced on the morning of the deposition. Each spreadsheet had discrepancies and issues which Mr. Pope—who was purportedly testifying on behalf of ADT—could not explain. With respect to purchase data, Mr. Pope was shown three different sets of spreadsheets produced by ADT. He was directly asked which spreadsheet contained accurate purchase data and he could not say which contained the correct data:



2

████████████████████████████████████████████

When asked about this issue on a meet and confer on February 19, 2024—the first business day after Mr. Pope's deposition—counsel for ADT suggested that the document ADT_FRACTUS_8960 fixed the issues with previously designated purchase data. However, ADT_FRACTUS_8960 was introduced as Exhibit 8 in Mr. Pope's deposition and discussed at length. In fact, it was the comparison of ADT_FRACTUS_8960—and the identification of numerous unexplainable discrepancies between this data and earlier produced data—which *prompted the exchange quoted above*.

Counsel for Fractus explained this issue to ADT in an email following the February 19, 2024 meet and confer, however counsel for ADT did not respond. The day following the meet and confer, ADT produced a further supplement to its response to Interrogatory No. 10 stating that ████████████████████████████████████████ the same document which Mr. Pope was asked about and for which he was unable to give any satisfactory account during his deposition. Ex. 1 at 1.

*Installation Data:* With respect to installation data, Mr. Pope described the spreadsheets produced as ████████████████████████████████████ The morning of the deposition ADT's counsel provided a spreadsheet which had not yet been produced but which he represented was updated consumption data. A spreadsheet with the same filename was produced *after* Mr. Pope's deposition as ADT_FRACTUS_0009199.

In the deposition, counsel for Fractus spent painstaking time walking through this spreadsheet and comparing it to those previously produced by ADT and / or designated in ROG responses. Mr. Pope's testimony revealed that both this spreadsheet and ADT's earlier designated spreadsheets were incomplete and/or inaccurate. The more recently produced sheet ██████

████████████████████████████████████████████

3

██████████

██████████

██████████

In ADT's last-minute supplement on February 20, 2024, ADT claimed that it had ██████████ ██████████ ██████████ Ex. 1 at 1. This is flatly incorrect ██████ ██████████ ██████████ ██████████ ██████████ Mr. Pope agreed that those products ████ ██████████

This is the second time Fractus has had to come to this Court regarding starkly insufficient productions of relevant materials from ADT. *See* Dkt. 84. At present, Fractus is left only to guess at ADT's actual consumption or installation numbers. Both numbers are needed in order to determine the volume of infringing devices which ADT acquired and/or installed. ADT's failure has prejudiced Fractus by examination of the accurate information with ADT's witnesses during the fact discovery period. The Court should not reward ADT's intransigence but should compel ADT to produce documents containing the accurate information, supplement their response to Fractus's Interrogatory No. 10, and put forth an additional corporate representative who is properly prepared to testify as to the contents of or discrepancies with the documents so designated.

II. **Documents Demonstrating Benefits And/Or Importance of Cellular Functionality**

---

██████████

4

Over months of discovery, Fractus tried to get ADT to search for and produce documents "demonstrating the benefits and/or importance of cellular functionality in the Accused Products to consumers or to ADT." ADT's counsel eventually stated ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ But public statements on ADT's website and in ADT's own financial reports make clear that ADT did not perform a diligent—or indeed any—search for such documents.

Fractus was able to locate public statements on ADT's own website regarding the benefits of cellular connectivity to ADT and its customers after only a cursory google search, including statements touting an ADT-branded cellular monitoring service known as "CellGuard." *See, e.g.*, help.adt.com/s/article/Do-I-Need-a-Landline-for-My-ADT-Monitored-Security-System (*available at* perma.cc/X79P-QS6N?type=image); adt.com/resources/cellular-backup (*available at* perma.cc/3QV3-V5H3). Fractus located similar public statements in ADT's audited 10K annual reports. *See* ADT's Annual Report for the Fiscal Year Ended December 31, 2022 at 23 (*available at* perma.cc/5ZVJ-BQ5D). Fractus confronted Mr. Tim Rader—designated on topic 14 ("evaluating the inclusion/exclusion of cellular connectivity in the accused products") and topic 34 ("the benefits" to ADT and its customers "from cellular connectivity in the Accused Products")—with this material at his deposition. Mr. Rader could offer no explanation as to why such materials were missing from ADT's document production or whether ADT had further internal documents regarding the benefits of cellular monitoring to its consumers:



5



Following this deposition, ADT has produced only two of the websites cited by counsel for Fractus and explained the lack of documents by stating that the websites shown were old. A cursory review demonstrates that this claim is incorrect; at least one of ADT's websites discussing the benefits of cellular connectivity was shown to Mr. Rader and is dated October 25, 2023. *See* help.adt.com/s/article/Do-I-Need-a-Landline-for-My-ADT-Monitored-Security-System (*available at* perma.cc/X79P-QS6N?type=image). ADT has still not produced this website.

When asked about this website at his deposition, Mr. Rader again had no explanation as to why such materials were missing from ADT's document production or whether ADT had further internal documents regarding the benefits of cellular monitoring to its consumers:



ADT attempted to clean up its insufficient search by producing some, but not all, of the public statements already identified by Fractus. But, problematically, ADT has still not produced a single internal document from which these public statements made in its SEC filings and on its website must be based. It defies belief that ADT has generated recent public statements—including sworn statements in its 10-Ks—touting cellular connectivity yet has never—according to ADT—

6

discussed any of these issues internally and has no documents to back-up these statements. For ADT's representations to be correct, an ADT employee would have needed to type these statements into the ADT website and ADT's 10-K directly, and they have never been otherwise considered or discussed within ADT within the document production period. This is not realistic. The more likely scenario is that ADT's search for these documents was deficient, and ADT should be ordered to conduct a more diligent search.

Accordingly, Fractus requests an order compelling ADT to perform a rigorous and thorough search for such documents. If ADT continues to insist that these public statements came into existence with zero internal discussion or support, then it should be required to produce to the Court a statement under oath attesting to its efforts to search for such documents. In addition, ADT should be compelled to put forth witnesses who Fractus can depose regarding this issue.

### III.   Conclusion

This Court should grant Fractus's motion and require ADT to (1) produce accurate purchase and installation data regarding the Accused Products, (2) to supplement ADT's response to Fractus's Interrogatory No. 10 identifying the accurate documents and what corrections these documents represent to ADT's prior responses, and (3) provide an additional 30(b)(6) deposition from a corporate representative regarding the supplement and any documents cited therein.

The Court should further (1) require ADT to conduct a thorough search for any documents that have discussed CellGuard or the benefits of cellular connectivity to consumers or to ADT; (2) require ADT to produce a report to the Court under penalty of perjury detailing their search for such documents; and (3) require ADT to identify and produce for deposition the authors of the website and annual report statements which Fractus has identified or which are subsequently produced regarding the benefits of cellular connectivity to ADT and its consumers.

██████████████████████████████

Dated: February 20, 2024   Respectfully submitted,

By: <u>*/s/ Max L. Tribble by permission Claire Abernathy Henry*</u>
 Max L. Tribble
 TX State Bar No. 20213950
 mtribble@susmangodfrey.com
 Joseph Grinstein
 TX State Bar No. 24002188
 jgrinstein@susmangodfrey.com
 Justin A. Nelson
 TX State Bar No. 24034766
 jnelson@susmangodfrey.com
 Adam Tisdall
 Texas State Bar No. 24106885
 atisdall@susmangodfrey.com
 **SUSMAN GODFREY L.L.P.**
 1000 Louisiana, Suite 5100
 Houston, TX 77002-5096
 Telephone: (713) 651-9366
 Facsimile: (713) 654-6666

 Genevieve Vose Wallace
 gwallace@susmangodfrey.com
 **SUSMAN GODFREY L.L.P.**
 1201 Third Avenue
 Suite 3800
 Seattle, WA 98101
 Telephone: 206-516-3880

 J. Craig Smyser (*pro hac vice*)
 TX State Bar No. 24117083
 csmyser@susmangodfrey.com
 **SUSMAN GODFREY L.L.P.**
 1301 Avenue of the Americas, 32nd Floor
 New York, NY 10019
 Telephone: (212) 729 2023

 S. Calvin Capshaw
 TX State Bar No. 03783900
 ccapshaw@capshawlaw.com
 Elizabeth L. DeRieux
 TX State Bar No. 05770585
 ederieux@capshawlaw.com

8

███████████████████████████████

**CAPSHAW DERIEUX, L.L.P.**
114 East Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 845-5770

T. John Ward, Jr.
TX State Bar No. 00794818
jw@wsfirm.com
Claire Abernathy Henry
TX State Bar No. 24053063
claire@wsfirm.com
Andrea L. Fair
TX State Bar No. 24078488
andrea@wsfirm.com
**WARD, SMITH & HILL, PLLC**
P.O. Box 1231
Longview, TX 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**ATTORNEYS FOR FRACTUS, S.A.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via email on February 20, 2023.

/s/ *Claire Abernathy Henry*
Claire Abernathy Henry

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

/s/ *Claire Abernathy Henry*
Claire Abernathy Henry

## CERTIFICATE OF CONFERENCE

The undersigned hereby certify that counsel for the parties have complied with Local Rule CV-7(h). In addition to informal conferences, the parties engaged in a lead and local meet and confer phone call concerning the subject matter of this motion on February 19, 2024. Counsel present on this call included: Max Tribble, Claire Henry, Craig Smyser, Adam Tisdall, Michael Eric Zeliger, Aya Hatori, and Melissa Smith.

At the February 19 meet and confer, counsel for Fractus requested that Defendants supplement their responses to Interrogatory 10 and raised the issue of the missing cellular connectivity documents. ADT's counsel stated that they intended to supplement their response to Interrogatory 10 but suggested that the relevant materials had already been produced. Fractus informed ADT's counsel via email that the documents mentioned on the meet-and-confer had been discussed with Mr. Ken Pope but that he had indicated the documents did not appear correct. ADT did not respond to this email. ADT then provided a supplemental response to Interrogatory 10 at 5:29 PM CST on February 20, 2024 (the day of this motion). This supplemental response points to the same documents discussed with Mr. Pope and does not resolve the issue with ADT's responses to Fractus's Interrogatory No. 10. ADT's counsel also stated on the meet and confer that they would not be producing any additional documents regarding cellular connectivity. Accordingly, the parties have reached an impasse that requires Court intervention.

*/s/ Max L. Tribble*
Max L. Tribble

*/s/ Claire Abernathy Henry*
Claire Abernathy Henry
