**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| FRACTUS, S.A., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:22-cv-00412-JRG |
| | ) | |
| v. | ) | Jury Trial Requested |
| | ) | |
| ADT LLC d/b/a ADT Security Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT ADT LLC'S MOTION FOR SUMMARY
<u>JUDGMENT OF NONINFRINGEMENT</u>**

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................................................... 1

II.  BACKGROUND ................................................................................................................ 1

    A.  Procedural Status ........................................................................................................ 1

    B.  The Asserted Patents Are Directed to Portable Devices ............................................ 2

        1.  The '365 and '887 Patents ..................................................................................... 2

        2.  The '103 Patent ..................................................................................................... 5

    C.  The Accused Products ................................................................................................. 7

III.  LOCAL RULE CV-56(a) STATEMENTS ....................................................................... 9

    A.  Statement of Undisputed Material Facts ..................................................................... 9

    B.  Statement of Issues to Be Decided by the Court ...................................................... 10

IV.  LEGAL STANDARDS ................................................................................................... 10

    A.  Summary Judgment .................................................................................................. 10

    B.  Infringement .............................................................................................................. 11

V.  ARGUMENT ................................................................................................................... 11

    A.  The '365 and '887 Patents Are Not Infringed ......................................................... 12

    B.  The '103 Patent Is Not Infringed ............................................................................. 14

VI.  CONCLUSION ............................................................................................................... 16

████████████████████████████

## TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................................................10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................................11

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,
103 F.3d 978 (Fed. Cir. 1997)...............................................................................................11

*In re Fought*,
941 F.3d 1175 (Fed. Cir. 2019).............................................................................................11

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991).............................................................................................11

*Searfoss v. Pioneer Consol. Corp.*,
374 F.3d 1142 (Fed. Cir. 2004).............................................................................................11

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
983 F. 3d 1367 (Fed. Cir. 2021)............................................................................................11

Rules and Regulations

Federal Rules of Civil Procedure
Rule 56(a).................................................................................................................................10

███████████████████████████

**EXHIBIT LIST**

| EXHIBIT NO. | TITLE |
|:---:|:---:|
| A | Excerpts from the Prosecution History of U.S. Patent No. 8,456,365 |
| B | Excerpts from the Prosecution History of U.S. Patent No 8,674,887 |
| C | Excerpts from the Prosecution History of U.S. Patent No 8,738,103 |
| D | Excerpts from the Rebuttal Expert Report of Martin J. Feuerstein, Ph.D., March 25, 2024 |
| E | ADT Market Requirements Document, ADT_FRACTUS_0009091 |
| F | Installation Guide, ADT_FRACTUS_0000222 |
| G | Installation Guide, FRAC-ADT-00426587 |
| H | Excerpts from the Expert Report of Dr. Stuart Long Regarding Infringement, March 5, 2024 |
| I | Installation Guide, ADT_FRACTUS_0000035 |
| J | Excerpts of Transcript of Deposition of Tim Rader, taken February 13, 2024 |
| K | Excerpts of Transcript of Deposition of Stuart Long, taken March 29, 2024 |

I.    **INTRODUCTION**

All of the asserted claims in this case require a portable device that is either a "mobile communication device" or a "handheld multifunction wireless device" but the Accused Products are neither. Rather, the Accused Products are fixed control units for household burglar alarm and fire warning systems, which are housed in industrial boxes and/or touchscreen panels that are physically secured at a fixed location to communicate with sensors installed at that location and permanently connected to household power. Because these are neither mobile communication devices" nor "handheld multifunction wireless devices," none of the asserted claims is infringed. Accordingly, and for the reasons set forth in more detail below, ADT LLC ("ADT") moves for summary judgment of noninfringement.

II.   **BACKGROUND**

A.    **Procedural Status**

Plaintiff Fractus, S.A. ("Fractus") originally asserted six patents against ADT. After Magistrate Judge Payne issued his claim construction order (Dkt. 115), Fractus reduced the asserted patents and claims, and narrowed the list of products accused of infringement. Specifically, Fractus dropped three patents entirely (U.S. Pat. Nos. 11,349,200; 7,471,246; and 7,907,092), and dropped all but two of the asserted claims in U.S. Pat. No. 8,738,103. Dkt. 131. The only claims now being asserted are as follows (independent claims in ***bold italics***):

| U.S. Patent Number | Claims |
|---|---|
| 8,456,365 ("the '365 patent," Dkt. 1-5) | ***1***, 2, 4, 5, 6, 7, 8, 9, 12, 13, 14, ***15***, 20, 22, 23, 31, 32, 33, 35, 36, 37, 41, 43, 44 |
| 8,674,887 ("the '887 patent," Dkt. 1-4) | ***1***, 2, 4, 5, 7, ***14***, 16, 18 |
| 8,738,103 ("the '103 patent," Dkt. 1-6) | ***12***, 15 |

1

All of the remaining asserted claims of the '365 patent require a device that is a *"mobile communication device,"* having an antenna "arranged *within* the device housing" for that *mobile communication device.* All of the remaining asserted claims of the '887 patent require a device that is a "*mobile* communication device" having an antenna secured to a mounting structure "positioned *within* the mobile communication device." The two remaining asserted claims of the '103 patent require a device that is a "*handheld* multifunction wireless device" having an antenna that is "*within* the handheld multifunction wireless device." This motion is dispositive of all of these remaining asserted claims.

## B.   The Asserted Patents Are Directed to Portable Devices

All three asserted patents are directed to compact antennas, which are specially folded to fit within portable devices such as mobile phones and other handheld communication devices, to address interference and bandwidth issues with prior art antennas used with those devices.

### 1.   The '365 and '887 Patents

The '365 and '887 patents are part of a family of at least eight patents that claim priority from a common PCT application[1] directed to a "Multi-Band Monopole Antenna For A Mobile Communications Device." As disclosed in these patents:

> When mounted inside a mobile communications device, an antenna is often subject to problematic amounts of electromagnetic interference from other metallic objects within the mobile communications device, particularly from the ground plane. An inverted-F antenna has been shown to perform adequately as an internally mounted antenna, compared to other known antenna structures. Inverted-F antennas, however, are typically bandwidth-limited, and thus may not be well suited for bandwidth intensive applications.

Dkt. 1-5 ('365 patent) at 1:30-45; Dkt. 1-4 ('887 patent) at 1:37-46.

---

[1] PCT/EP02/14706. *See, e.g.,* Dkt. 1-5 ('365 patent).  The Claim Construction Order referenced these patents as "not related," but they are in fact part of the same family. *See* Dkt. 115 at 7.

To address this issue, these patents disclose multi-band monopole antennas that are highly manipulated and folded so they can be "particularly well-suited for use in mobile communications devices, such as Personal Digital Assistants (PDA's), cellular telephones, and pagers." Dkt. 1-5 ('365 patent) at 1:18-22; Dkt. 1-4 ('887 patent) at 1:28-31.

Figure 1 of the patents and associated text disclose "an exemplary multi-band monopole antenna 10 for a mobile communications device," with a first radiating arm 12 having a meandering section 20 that "is formed into a geometric shape known as a space-filling curve, in order to reduce the overall size of the antenna 10." Dkt. 1-5 ('365 patent) at 2:55-3:10; Dkt. 1-4 ('887 patent) at 2:47-3:3. Figures 2-9 are used to disclose alternative embodiments of this multi-band monopole antenna. Figure 10 is then used to disclose the multi-band monopole antenna "coupled to a circuit board for a mobile communications device" and Figure 11 is used to disclose an exemplary mounting structure "for securing a multi-band monopole antenna within a mobile communications device." Dkt. 1-5 ('365 patent) at 2:5-10; Dkt. 1-4 ('887 patent) at 2:19-24. Figures 12-14 are then used to illustrate exploded views of three such mobile communication devices having the disclosed multi-band monopole antenna (*i.e.,* a clamshell-type cellular phone, a candy-bar-type cellular phone, and a personal digital assistant):



*Fig. 12*



*Fig. 13*

3



*Fig. 14*

Dkt. 1-5 ('365 patent) at 5:49-6:49; Dkt. 1-4 ('887 patent) at 5:40-6:37.

The originally filed claims for the '365 patent were a multi-band monopole "antenna for use in a mobile communication device," with a dependent claim for a housing "containing the antenna." *See* Exh. A (Excerpts from Prosecution History of '365 patent) at FRAC-ADT-00005565. Those claims were rejected for claiming the same invention as another patent in the family (U.S. Patent No. 7,423,592) (*id.* at FRAC-ADT-00004279), so Fractus cancelled them to instead claim the "mobile communication device" itself, having the antenna "arranged inside the device housing" for the mobile communication device.  *Id.* at FRAC-ADT-00004263.

The originally filed claims for the '887 patent were a cellular telephone handset containing the claimed antenna. *See* Exh. B (Excerpts from Prosecution History of '887 patent), FRAC-ADT-00390364 at 390375.  Those claims were also rejected for claiming the same invention as another patent in the family (this time, U.S. Patent No. 8,253,633) (*id.* at 390536) so Fractus cancelled them to instead claim the "mobile communication device" as in the '365 patent, but with the asserted claims further requiring that the antenna be secured to a "mounting structure positioned within the mobile communication device." *Id.* at 390660-3.

Fractus has not produced any evidence that disputes the above material facts regarding the '365 and '887 patents and there is no genuine issue in dispute with respect thereto.

### 2.      The '103 Patent

As with the '365 patent and the '887 patent, the '103 patent is also directed to antennas that are specially shaped to fit within "a portable multifunction wireless device (MFWD) and in particular to a handheld multifunction wireless device," such as a smartphone or handheld multimedia terminal. Dkt. 1-6 ('103 patent) at 5:45-54. The '103 patent elaborates on the design challenges noted in the '365 patent and the '887 patent for such handheld multi-function wireless devices, noting, for example:

> While it might appear desirable to provide an antenna with a uniform radiation pattern (sphere-like) for voice calls such a pattern turns out to have substantial drawbacks in terms of a desired low specific absorption rate since it sometimes leads to an increased absorption of radiation within the hand and the head of the user during a voice phone call.

> In every MFWD, the choice of the antenna, its placement in the device and its interaction with the surrounding elements of the device will have an impact on the overall wireless connection performance making its selection non-trivial and subject to constraints due to particular target use, user and market segments for every device.

Dkt. 1-6 ('103 patent) at 2:40-51.

To address these issues, the patent discloses an antenna system disposed within handheld MFWD's having the claimed shape and complexity factor. Figures 5A-B, for example, show an example of MFWD being held typically by a right-handed user to originate a phone call, and how the feeding point corner of the antenna rectangle of said MFWD may be selected; and Figure 5C shows an exploded view of an exemplary clamshell-type MFWD:



Dkt. 1-6 ('103 patent) at Figs. 5(a),(c).

Relative to these figures, the '103 patent describes in detail how the antenna system are contoured and folded to fit along with the related device components within a handheld MFWD that is "typically held by a right-handed user" without compromising their functionality. Dkt. 1-6 ('103 patent) at 6:56-59.

The originally filed claims for the '103 patent were a "multifunction wireless device" having the claimed antenna system, with some claims having structure for these three handheld devices. *See* Exh. C (Excerpts from Prosecution History of '103 patent), FRAC-ADT-00334887 at 334972. Those claims were rejected as being obvious over the cited references, so Fractus amended the asserted claims to a "handheld" multifunction wireless device having the claimed antenna "within the handheld multifunction device." *Id.* at 388460-388468. Fractus then expressly relied on this amendment in their arguments against the cited references (*e.g.,* "Applicant respectfully submits that the antenna taught by Tran *cannot* be integrated *within* a *handheld* wireless device due to its physical dimensions."). *Id.* at 388472 (emphasis in original).

6

████████████████████████████████████████████

Fractus has not produced any evidence that disputes the above material facts regarding the
'103 patent and there is no genuine issue in dispute with respect thereto.

### C.    The Accused Products

The Accused Products are burglar alarm and fire warning system control units and cellular

radios ████████████████████████████████████████████████████

████████████████████████████████████████████ *See* Exh. D (Rebuttal Expert

Report of Martin J. Feuerstein, Ph.D., March 25, 2024) (hereafter, "Feuerstein Report") at ¶¶ 86,

92, 126, 129-130. ████████████████████████████████████

████████████████████████████████████████████████████

████

To maintain their Underwriter's Laboratory (UL) listings, the Accused Products must be
permanently connected to household power as their primary source of power, either through a
direct wire connection or an electrical plug. *See, e.g.,* Exh. E (ADT Market Requirements
Document), ADT_FRACTUS_0009091 at 9097 ("The Communicator must have a 24 hour battery
backup from the panel (per UL 985).").

Fractus has defined three groups of Accused Products in its infringement expert report. The
exemplary images below demonstrate ADT's standard method for mounting the Accused Product
in each of these categories is to a wall during installation to physically secure them at that fixed
location. *See also, e.g.,* Exh. F (Installation Guide for the LTE-XV and the LTE-XA),
ADT_FRACTUS_0000222 at 227 (describing mounting to the wall)[2]; Exh. G (Installation Guide

---

[2] The LTE-XV and the LTE-XA are cellular communications modules that are accused of
infringing the '365 patent and the '887 patent. *See* Exh. H (Expert Report of Dr. Stuart Long
Regarding Infringement, March 5, 2024 (hereafter, "Long Report") at viii-ix.

████████████████████████████

for the ADTHYBWL panel with the ADTLTE Communications Module) FRAC-ADT-00426587

at 426587 (directing mounting the control cabinet to "a sturdy wall").[3]



| ████████████████ | **Pictures illustrating this equipment when installed** |
|---|---|
| | https://www.alarmgrid.com/products/adt-safewatch-pro-3000 (left image)<br><br>https://www.alarmgrid.com/products/honeywell-gsmv4g (right image) |
| | https://www.adt.com/shop/unified/packages/unified-build-your-own-pro.html |

[3] ██████████████████████████████████████████████████████████████

*ee* Exh. J (Excerpts of Transcript of Deposition of Tim Rader, taken February 13, 2024) (hereafter, "Rader Dep. Tr.") at 190:15-21.

8

| ████████████████████ | Pictures illustrating this equipment when installed |
|---|---|
|  | |
| | https://qolsys.com/residential/[4] |

Fractus has not produced any evidence that disputes the above material facts regarding the Accused Products and there is no genuine issue in dispute with respect thereto.

## III.    LOCAL RULE CV-56(a) STATEMENTS

### A.    Statement of Undisputed Material Facts

1.      All of the asserted claims of the '365 patent require a "mobile communication device" having the claimed antenna "arranged inside the device housing."

2.      All of the asserted claims of the '887 patent require a "mobile communication device" having the claimed antenna secured to a mounting structure "positioned within the mobile communication device."

---



████████████████████████████████████████████

3.      All of the asserted claims of the '103 patent require a "handheld multifunction wireless device" having the claimed antenna "within the handheld multifunction wireless device."

4.      ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  *See* Exh. J

(Rader Dep. Tr.) at 258:4-7.

**B.      Statement of Issues to Be Decided by the Court**

1.      Whether summary judgment of noninfringement of the '365 patent should be granted because the Accused Products are not a "*mobile* communication device" having an antenna "arranged within the device housing" of the *mobile* communication device.

2.      Whether summary judgment of noninfringement of the '887 patent should be granted because the Accused Products are not a "*mobile* communication device" having an antenna secured to a mounting structure "positioned with the *mobile* communication device"

3.      Whether summary judgment of noninfringement of the '103 patent should be granted because the Accused Products are not "*handheld* multifunction wireless devices" having an antenna "within the *handheld* multifunction wireless device."

**IV.      LEGAL STANDARDS**

**A.      Summary Judgment**

Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must afford all reasonable inferences and construe

10

the evidence in the light most favorable to the non-moving party. *See id.* at 255. A "complete failure of proof concerning an essential element of the nonmoving party's case" renders summary judgment proper in favor of the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.     Infringement

Analysis of infringement is a two-step process. "First, the trial court determines the scope and meaning of the asserted claims." *Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1148 (Fed. Cir. 2004). "Second, the claims as construed by the court are compared limitation by limitation to the features of the allegedly infringing device." *Id.* A plaintiff asserting patent infringement bears the burden to prove that the defendant satisfies each and every limitation of an asserted claim. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) ("[T]he failure to meet a single limitation is sufficient to negate infringement of the claim.").

In patent cases, summary judgment of non-infringement is warranted where "the parties do not dispute any relevant facts regarding the accused product." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997). Whether claim language is limiting is a matter of law for the Court to decide when, as in this case, the issue is resolved based on intrinsic evidence, and not on factual bases such as extra-patent usage of technical terms. *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F. 3d 1367, 1378-79 (Fed. Cir. 2021). *See also, In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019) ("We have repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim.").

## V.     <u>ARGUMENT</u>

Based on the undisputed material facts outlined herein, the Accused Products are neither "mobile" nor "handheld" devices. These are essential limitations in all of the asserted claims, and Plaintiff has failed to produce any relevant evidence that the Accused Products satisfy these essential limitations. Summary judgment of noninfringement is therefore warranted.

11

████████████████████████████████████████

### A.    The '365 and '887 Patents Are Not Infringed

During prosecution of both the '365 patent and the '887 patent, the claims were rejected for claiming the same invention as other patents in their family. To overcome those rejections, Fractus chose to limit the asserted claims of the '365 patent to a "mobile communication device" having the claimed antenna "arranged with the device housing" of that mobile communication device, and Fractus chose to limit the asserted claims of the '887 patent to a "mobile communication device" having the claimed antenna secured to a mounting structure "positioned within the mobile communication device." *See* Section II.b.1, *supra*.

During claim construction in this case, Fractus did not dispute that the asserted claims are limited to a "mobile communication device" having the claimed antenna within that mobile communication device. Instead, Fractus contended that "this term [mobile communication device] relates to a device that uses mobile communication technology to communicate." Dkt. 87 at 1. However, Judge Payne *rejected* Fractus' contention, holding instead that "mobile communications device" has its "plain and ordinary meaning." Dkt. 115 at 12. And Fractus did not challenge Judge Payne's construction in their other objections to Judge Payne's order. *See* Dkt. 123 at 3 (objecting to constructions of "perimeter" and "hole(s) intersects the external perimeter").

Having accepted the Court's finding that "mobile communication device" is to be given its plain and ordinary meaning, Fractus' infringement expert nevertheless stated in his report ██████

████████████████████████████████████████████████████

████████████████████████████████ Exh. H (Long Report) at ¶¶ 259, 330. But this re-imagining of the term is not consistent with how it is used in the patents, and Fractus' expert did not provide any evidence to support his reimagining of this term. *See, e.g.,* Exh. K (Excerpts of Transcript of Deposition of Stuart Long, taken March 29, 2024) (hereafter, "Long

█████████████████████████████████████████████

Dep. Tr.") at 16:1-17:5 ████████████████████████████████████████████

████████████████████████████████

The specification of the '365 patent and the '887 patent gives three examples of a mobile communication device: a clamshell-type cellular phone, a candy-bar-type cellular phone, and a personal digital assistant. Dkt. 1-5 ('365 patent) at 1:18-22, 5:49-6:49, Figs. 12-14; Dkt. 1-4 ('887 patent) at 1:28-31, 5:40-6:37, Figs. 12-14. Indeed, every single reference to "mobile communications" in the patents is in regard to such *devices*—communication devices that are commonly understood to be mobile, *i.e.,* portable—and to designing compact, folded antennas that can fit within such devices, while addressing interference and bandwidth issues that may occur with their use.

Even where the patents discuss wireless communication frequencies (in regard to tuning a radiating arm of the antenna), they do ***not*** refer to those frequencies as being part of a "mobile communication spectrum," as now posited by Fractus and its expert. *See, e.g.,* Dkt. 1-5 ('365 patent) at 3:41-64; Dkt. 1-4 ('887 patent) at 3:34-56. █████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ *See* Exh. D (Feuerstein Report), ¶ 84 (██████████

███████████████████████████████████████). ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. *Id.* at ¶¶ 130, 173. And, in fact, the specification of the '365 patent and the '887 patent also uses the various protocol names when describing tuning the antenna's radiating arm for particular frequencies; not "mobile communication spectrum." *See, e.g.,* Dkt. 1-5 ('365 patent) at 3:41-64; Dkt. 1-4 ('887 patent) at 3:34-56.

████████████████████████████████████

In the face of this intrinsic evidence that the plain and ordinary meaning of "mobile communication device" is a communication device that is mobile, Fractus has not produced any evidence as to why a person of skill in the art would instead consider the term "mobile communication *device*" to refer to a particular communication *spectrum* under the patents.

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████  Exh. K (Long Dep. Tr.) at 14:5-15:7.

By contrast, the Accused Products are control units and cellular radios for household burglar alarm and fire warning systems. They are *fixed* wireless devices that are physically secured and permanently connected to household power to communicate with sensors at that fixed location. By their nature and operating requirements, they cannot be *mobile* communication devices under the plain and ordinary meaning of that term. Accordingly, no reasonable juror could conclude that any of the Accused Products infringe any of the asserted claims of the '365 patent or the '887 patent, and summary judgment of non-infringement is therefore warranted.

### B.    The '103 Patent Is Not Infringed

During the prosecution of the '103 patent, the claims were rejected as being obvious over cited references. To overcome this rejection, Fractus chose to limit the asserted claims to a "*handheld* multifunction wireless device" having the claimed antenna "within the *handheld* multifunction device" and relied on this limitation in their arguments against the cited references. *See* Section II.B.2, *supra*.

During claim construction in this case, Fractus did not dispute that the asserted claims of the '103 patent are limited to a "*handheld* multifunction wireless device" having the antenna system "within the *handheld* multifunction device" and did not otherwise seek a construction by

14

████████████████████████████

the Court of the term "handheld." This term is therefore given its plain and ordinary meaning as used in these essential limitations in the asserted claims.

Fractus' infringement expert ████████████████████████████████████

████████████████████████████████████████ Exh. H (Long Report) at ¶ 232. And, Fractus has not produced any evidence regarding the plain and ordinary meaning of this term as used in these essential limitations in the claims.

The '103 patent makes it clear that the plain and ordinary meaning of "handheld" is just that—a device that is handheld and portable: "The present invention is related to a portable multifunction wireless device (MFWD) and in particular to a handheld multifunction wireless device." Dkt. 1-6 ('103 patent) at 5:45-47. *Id.* at 6:13-17. The examples disclosed in the patent are all wireless devices that are commonly understood to be portable and handheld: a blackberry-style device (as typically held in the right hand) and a clamshell-type cell phone. *Id.* at Figs. 5(a)-(c). In addition to interference and bandwidth challenges with designing antennas for portable devices, the '103 patent also discusses at length the specific ergonomic and other challenges in designing antenna systems for portable devices that are handheld, and discloses various design criteria for compact, folded antenna systems that can fit within such devices.

All of the Accused Products accused of infringing the '103 patent are touchscreen panels that are mounted to a wall,[5] and permanently connected to household power, to physically secure them at that fixed location. Fractus has not produced any evidence to support how these mounted alarm panels could be considered "*handheld* multi-function wireless devices" under the plain and

---

[5] Or, on rare occasions, affixed to a stand to sit on a table or other surface to physically secure them at that location during operation. *See* Section II.C, *supra*.

ordinary meaning of that term as used in essential claim limitations of the asserted claims of the '103 patent.

Accordingly, no reasonable juror could conclude that any of the Accused Products infringe any of the asserted claims of the '103 patent, and summary judgment of non-infringement is therefore again warranted.

## VI.    **CONCLUSION**

For the above reasons, the Court should grant summary judgment of noninfringement for all asserted claims of the '365 patent, the '887 patent, and the '103 patents. Since the other patents are no longer at issue, this would be case dispositive and the Court should therefore enter summary judgment of noninfringement in favor of ADT.

Date: April 8, 2024                              Respectfully Submitted By:

                                                 */s/ Michael E. Zeliger*
                                                 Michael E. Zeliger (*pro hac vice*)
                                                 Ranjini Acharya (*pro hac vice*)
                                                 **Pillsbury Winthrop Shaw Pittman LLP**
                                                 michael.zeliger@pillsburylaw.com
                                                 ranjini.acharya@pillsburylaw.com
                                                 2550 Hanover Street
                                                 Palo Alto, CA 94304-1115
                                                 Telephone: 650.233.4500
                                                 Fax: 650.233.4545

                                                 Steven Tepera (24053510)
                                                 **Pillsbury Winthrop Shaw Pittman LLP**
                                                 steven.tepera@pillsburylaw.com
                                                 401 Congress Avenue, Suite 1700
                                                 Austin, TX 78701-3797
                                                 Phone: 512.580.9600
                                                 Fax: 512.580.9601

                                                 David A. Simons (*pro hac vice*)
                                                 **Pillsbury Winthrop Shaw Pittman LLP**
                                                 david.simons@pillsburylaw.com

16

████████████████████████████

1650 Tysons Boulevard, 14th Floor
McLean, VA 22102-4856
Phone: 703.770.7900
Fax: 703.770.7901

Eric C. Rusnak
Theresa A. Roozen (*pro hac vice*)
**Pillsbury Winthrop Shaw Pittman LLP**
eric.rusnak@pillsburylaw.com
theresa.roozen@pillsburylaw.com
1200 17th St NW
Washington, DC 20036
Phone: 202.663.8000
Fax: 202.663.8007

*Attorneys for Defendant ADT LLC*

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be transmitted to counsel for Fractus via electronic service on April 8, 2024.

/s/ Michael E. Zeliger
Michael E. Zeliger

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document and exhibits hereto are being filed under seal pursuant to the Protective Order entered in this matter.

/s/ Michael E. Zeliger
Michael E. Zeliger