# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| FRACTUS, S.A., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-CV-00412-JRG |
| | § | |
| ADT LLC, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Fractus, S.A.'s ("Fractus") Motion to Compel Responses to Fractus's Interrogatory No. 10 and Production of Documents Regarding the Benefits of Cellular Connectivity to ADT and its Customers (the "Motion to Compel"). (Dkt. No. 114.) In the Motion to Compel, Fractus moves to compel ADT LLC ("ADT") to supplement its response to Fractus's Interrogatory No. 10 and to compel ADT to produce documents related to the benefits of cellular connectivity in the Accused Products to ADT and its customers. (*Id.*) Having considered the Motion to Compel, and the subsequent briefing, the Court finds that the same should be **GRANTED-IN-PART** and **DENIED-IN-PART**.

### I.  BACKGROUND

Fractus's Interrogatory No. 10 was served on March 23, 2024, and it states:

> For each Accused Product, on a monthly basis beginning with the first sale of each Accused Product, provide (a) the number of units sold in the United States; (b) the revenue received from sales of the Accused Products in the United States; (c) a complete description of all costs incurred in providing the Accused Products in the United States, including the amounts of the costs incurred; and (d) the gross profits, contribution profits, operating profits, and net profits generated from the provision of the Accused Products in the United States.

(Dkt. No. 114 at 1-2.)

ADT initially responded to this interrogatory by pointing to two spreadsheets reflecting for "purchase data" and another spreadsheet reflecting "installation data." ADT supplemented its response on February 9, 2024 to state that "information relevant to this interrogatory may be found within ADT_FRACTUS_0003765." (Dkt. No. 114 at 2.) ADT also produced additional purchase data spreadsheets leading up the deposition of one of its 30(b)(6) witnesses, Mr. Kenneth Pope. (*Id.*)

At Mr. Pope's deposition held on February 16, 2024, counsel for Fractus pointed out conflicts in the various spreadsheets and attempted to verify which of the spreadsheets contained accurate purchase and installation data. (*Id.*) Mr. Pope indicated that the spreadsheets may differ as to scope and accuracy, but he was not aware which of the spreadsheets contained the most accurate and complete purchase and installation data. (*Id.*) The parties met and conferred following Mr. Pope's deposition on February 19, 2024—the day before the close of fact discovery—to discuss these issues. (*Id.* at 3.) In the meet and confer, ADT allegedly represented that ADT_FRACTUS_8960 contained the accurate purchase data and fixed issues with the previously produced purchase data. (*Id.*) Fractus, however, pointed out that ADT_FRACTUS_8960 was one of the spreadsheets presented to Mr. Pope, and Mr. Pope was uncertain whether this spreadsheet contained accurate data. (*Id.*) The following day—the deadline for the close of fact discovery— ADT served a supplemental response to Interrogatory No. 10 stating that "purchase data for the accused products is reflected in ADT_FRACTUS_8960." (*Id.*) ADT also stated that it had "produced responsive documents pertaining to installation data at ADT_FRACTUS_0009199" and claimed that "[t]he Accused Products that are not reflected in the installation data have not been purchased by ADT between 2016 and 2023." (*Id.*) Fractus filed the present Motion to Compel a few hours later.

2

Fractus also alleges that it has attempted for months to get ADT to search for and produce documents "demonstrating the benefits and/or importance of cellular functionality in the Accused Products to consumers or to ADT." Fractus made this request at least as of February 1, 2024 in an email request for documents. (Dkt. No. 114-3.) In response to Fractus's request, ADT has represented that it "does not have any responsive documents." (*Id*.) Fractus also noticed "evaluating the inclusion/exclusion of cellular connectivity in the Accused Products" and "the benefits" to ADT and its customers "from cellular connectivity in the Accused Products" as topics for 30(b)(6) witness depositions. (Dkt. No. 114 at 5.)

## II.   DISCUSSION

Fractus's Motion to Compel can be reviewed as two requests. First, Fractus moves to compel ADT to supplement its response to Fractus's Interrogatory No. 10. Second, Fractus moves to compel ADT to produce documents concerning the "benefits of cellular connectivity" to ADT and its customers. The Court addresses both in turn.

### A.   Fractus's Motion to Compel Responses to Fractus's Interrogatory No. 10

Fractus argues that ADT's response to Interrogatory No. 10 is deficient because the documents identified by ADT in response to the interrogatory contain inaccurate information concerning ADT's purchase and installation data. (*Id.* at 2.) Fractus requests that the Court require ADT to (1) produce documents containing accurate information, (2) supplement its interrogatory response to identify the accurate documents, and (3) provide an additional 30(b)(6) deposition on these topics. (*Id.* at 7.)

Fractus's Motion to Compel is premised on the assertion that the documents identified by ADT, ADT_FRACTUS_8960 (purchase data) and ADT_FRACTUS_0009199 (installation data), contain inaccurate information. ADT's supplemental response, filed hours before the filing of this Motion to Compel, states that ADT_FRACTUS_8960 contains accurate purchase data and that

ADT_FRACTUS_0009199 contains accurate installation data. (*Id.* at 2.) Despite ADT's representations that these spreadsheets are accurate and resolve the prior confusion, Fractus disputes that these documents contain accurate information.

Fractus denies the accuracy of the purchase data in ADT_FRACTUS_8960 based on the deposition testimony of Mr. Kenneth Pope. ADT_FRACTUS_8960 was one of the spreadsheets containing purchase data shown to Mr. Pope. (*Id.*) When Fractus asked Mr. Pope to explain the differences and apparent contradictions in the spreadsheets, Mr. Pope explained that the spreadsheets may differ in terms of "scope and completeness." (*Id.*) When asked which of the three spreadsheets reflected the most accurate purchase and installation data, Mr. Pope responded that he did not know. (*Id.*) Following this deposition, counsel for ADT represented that ADT_FRACTUS_8960, one of the documents shown to Mr. Pope, contains the accurate purchase data, and ADT supplemented its interrogatory response to reflect such. (*Id.*) However, Fractus still contends that Mr. Pope's comments raise a question as to the accuracy of ADT_FRACTUS_8960, and it contends that ADT did not adequately addressed these concerns in the meet-and-confer following Mr. Pope's deposition or in the supplemental interrogatory response that followed. (Dkt. No. 114 at 3.)

Fractus also disputes that ADT_FRACTUS_0009199 reflects accurate installation data. Fractus claims that there are certain products that are shown as purchased by ADT between 2016-2023 in the purchase data in ADT_FRACTUS_8960, but such products are not found in the installation data in ADT_FRACTUS_0009199. (*Id.* at 3-4.) For example, Fractus notes that ADT_FRACTUS_8960 shows that ADT purchased 27,115 units of the LTE-L57A cellular radio module, but the LTE-L57A cellular radio modules are missing from ADT_FRACTUS_0009199 .

(*Id.*) Accordingly, Fractus disputes that ADT_FRACTUS_0009199 accurately reflects ADT's installation data.

In its response brief, ADT argues that its supplemental interrogatory response is correct: ADT_FRACTUS_0008960 reflects accurate purchase data and ADT_FRACTUS_0009199 reflects accurate installation data. (Dkt. No. 120 at 1-3.) According to ADT, the confusion lies in "Fractus' ongoing misunderstanding both of ADT's business and the nature of the data that ADT has accurately produced." (*Id*. at 2.)

Concerning the alleged "missing installation data," ADT represents that it only tracks the installation of its security panels, and it does not track what radio modules are installed with its panels. For example, ADT tracks its L5210 panels, but not whether such is installed with an LTE-L57A radio modules. (*Id.*) To the extent that an LTE-L57A radio module was installed with an L5210 panel, ADT contends that the installation data would only track the installation of the L5210 panel, and the inclusion of the LTE-L57A radio module in the security panel would be subsumed within that record. (*Id.*) Accordingly, ADT represents that its installation data is not incomplete or inaccurate, but rather misinterpreted by Fractus. (*Id.*)

Nonetheless, ADT agrees to serve a supplemental response to Interrogatory No. 10 to clarify the nature of the purchase and installation data that it has already produced, and ADT agrees to produce a corporate representative to testify on ADT_FRACTUS_0008960, ADT_FRACTUS_0009199, and ADT_FRACTUS_0009948. (*Id.* at 3.)

The Court is not persuaded that ADT_FRACTUS_0008960 and ADT_FRACTUS_0009199 reflect inaccurate purchase and installation data. At the deposition of Mr. Pope, Fractus called into question the accuracy of ADT's identified spreadsheets and asked Mr. Pope for clarification on which spreadsheet was accurate. When Mr. Pope answered that he

did not know, ADT took corrective measures by supplementing its interrogatory response to identify which of the produced spreadsheets contained the most accurate and complete data.

Fractus provides no compelling reason to question ADT's representation that ADT_FRACTUS_0008960 reflects accurate purchase data or that ADT_FRACTUS_0009199 reflects accurate installation data. Accordingly, the Court is not persuaded that compelling ADT to produce additional documents is warranted. However, the parties appear to agree that a supplemental response and additional 30(b)(6) deposition time is appropriate. The Court finds this to be an appropriate remedy for any disputes that remain concerning these issues.

> B. **Fractus's Motion to Compel Production of Documents Regarding the Benefits of Cellular Connectivity to ADT and its Customers**

Fractus also moves the Court to compel ADT to produce documents pertaining to the benefits of cellular connectivity in the Accused Products to ADT and its customers. (Dkt. No. 114 at 5-7.) Fractus contends that it attempted over months of discovery to "get ADT to search for and produce documents 'demonstrating the benefits and/or importance of cellular functionality in the Accused Products to consumers or to ADT.'" (*Id.* at 5.) In response to Fractus's requests, ADT represented that "ADT does not have any responsive documents." (Dkt. No. 114-3.) However, Fractus argues that public statements on ADT's website and in ADT's financial reports bely ADT's position that it has no responsive documents. (Dkt. No. 114 at 5-7.) Specifically, Fractus points to an article on ADT's website discussing an ADT-branded cellular monitoring service known as "CellGuard," including discussing its benefits to ADT and its customers. (*Id.*) Fractus also argues that similar statements can be found in ADT's audited 10-K annual reports. (*Id.*)

Fractus argues that the existence of these statements indicates that ADT did not diligently search for relevant documents. (*Id.*) The lack of any documents, according to Fractus, would suggest that ADT's public statements were made for the first time on the website and 10-K reports

6

without any prior internal discussion or documentation, which defies reason in Fractus's view. (*Id.*) Accordingly, Fractus requests that the Court (1) order ADT to conduct a thorough search for documents that discuss CellGuard or the benefits of cellular connectivity to consumers or to ADT, (2) order ADT to produce a report under penalty of perjury detailing their search for such documents, and (3) require ADT to identify and produce for deposition the authors of the website and annual report statements that Fractus has identified. (*Id.* at 7.)

ADT argues, "[a]s a threshold matter, Fractus has never served on ADT a request for documents demonstrating the 'benefits of cellular connectivity to consumers or to ADT.'" (Dkt. No. 120 at 3.) ADT contends that it has complied with the Court's ESI Order (Dkt. No. 60) by running email searches for all terms requested by Fractus and producing every non-privileged email that resulted from the search. (*Id.*) ADT alleges that Fractus never modified its search terms or requested that ADT perform a new search.

ADT contends that it has diligently performed searches and is not withholding any relevant documents. (*Id.*) According to ADT, it is not shocking that ADT has limited documentation relating to the benefits of cellular connectivity to consumers because ADT does not provide cellular services to its customers, but rather provides security monitoring systems. (*Id.* at 4.) ADT's security monitoring systems communicate with ADT monitoring centers either via home phone or broadband connection or via cellular connection, but according to ADT, it does not market to or even discuss such options with its customers. (*Id.*)

ADT claims that Fractus mischaracterizes the statements on its website and 10-K reports. (*Id.*) ADT argues that the statements on its website merely state that there are options for backup communication channels, including phone line or cellular connection, but does not "tout the benefits" of cellular connectivity. (*Id*. at 4-5.) ADT also argues that the statements in its 10-K

7

report discuss the risk of many homes and telecommunication companies switching away from landline connections entirely, increasing the risk that certain ADT systems capable of only transmitting via landline obsolete and necessitating the migration of customers to newer systems. (*Id.* at 5.) ADT contends that these statements do not discuss consumer preference for cellular technology. (*Id.*) Accordingly, ADT maintains that it has no documents responsive to Fractus's request.

ADT also argues that the Court should deny Fractus's request to compel the authors of the website and annual report statements for deposition because Fractus could have, but did not, notice such depositions during the discovery period. However, ADT "agrees to provide a declaration detailing its search efforts for documents responsive to those discovery requests that relate to 'demonstrating the benefits and/or importance of cellular functionality in the Accused Products to consumers.'" (*Id.* at 6.)

The Court agrees with Fractus that ADT should be required to produce documents pertaining to the benefits/importance of cellular connectivity to the Accused Products to the extent it has not already done so. As a threshold matter, ADT's argument that Fractus failed to serve a written request for production is misleading. The discovery order in this case requires relevant documents to be produced "[w]ithout awaiting a discovery request." (Dkt. No. 40 at 2-3.) Further, Fractus did in fact make a written request for such documents at least in an email dated February 1, 2024. (Dkt. No. 114-3 at 2.) ADT does not deny that documents pertaining to the benefits of cellular connectivity are relevant. Accordingly, to the extent that such documents exist, they should be produced.

ADT maintains that it has no relevant documents to produce on this topic. However, the Court is persuaded that ADT mischaracterizes Fractus's request and therefore misunderstands

8

what documents are responsive to this request. First, ADT seems to dispute that the statements on its website and 10-K reports do not relate to the "benefits of cellular connectivity." (*See* Dkt. No. 120 at 3-5.) Having reviewed ADT's public statements on its website and 10-K reports, the Court disagrees with ADT. For example, in a Q&A page on ADT's website, ADT claims that its Safewatch Cellguard is capable of operating in the event of a power outage, which ADT states is "another important benefit of Safewatch Cellguard." adt.com/resources/cellular-backup (*available* at perma.cc/3QV3-V5H3). ADT's 10-K report also discusses the fact that many of its customers' security systems do not operate with newer cellular or IP-based networks, requiring the migration of customers to newer systems to prevent customer attrition. ADT's 2022 10-K Annual Report (*available* at perma.cc/5ZVJ-BQ5D). To the extent that statements similar to those these exist in other documents, those statements are relevant to Fractus's case and those documents should have been produced.

Second, ADT argues that its public statements do not "discuss[] consumer preference for cellular technology," but Fractus's requested documents related to the "benefits and/or importance of cellular functionality in the Accused Products to consumers or to ADT," not documents reflecting "consumer preference for cellular technology." (*Compare* Dkt. No. 120 at 5 *with* Dkt. No. 114-3 at 2.) ADT's mischaracterization first ignores that Fractus's request relates to the importance "to ADT" not just its customers.[1] (*See* Dkt. No. 120 at 6.) Further, documents may concern the "importance" and "benefit" of cellular connectivity to ADT and its customers even if such document does not reflect a "preference" for cellular connectivity over other types of

---

[1] ADT even quotes Fractus's brief when it offers to file a declaration detailing its search efforts for documents "demonstrating the benefits and/or importance of cellular functionality in the Accused Products to consumers," but it omits the words "***and to ADT***." (*Compare* Dkt. No. 120 at 6 *with* Dkt. No. 114 at 5.) Fractus's offer to search for and produce documents related only to the importance of cellular functionality to consumers but not to ADT does not resolve the issue.

connections. (*Compare* Dkt. No. 120 at 5 *with* Dkt. No. 114-3 at 2.) ADT is correct that the statements on its website do not relate to customer "preference" between cellular and landline networks, but ADT's website nonetheless characterizes a cellular network's operation during power outages as an "important benefit." adt.com/resources/cellular-backup (*available* at perma.cc/3QV3-V5H3). To the extent that ADT is in possession of similar documents that discuss the benefits/importance of cellular connectivity to ADT and/or its customers, such documents should be produced. To the extent that ADT maintains it has no responsive documents even after the Court's clarification, the Court agrees that ADT should be required to file a signed declaration that it is not aware of any such documents despite conducting a diligent search.

However, the Court finds Fractus's final request that the Court "require ADT to identify and produce for deposition the authors of the website and annual report statements" to be excessive. The Court agrees with ADT that Fractus could have, but did not, request such witnesses within the discovery period. Further, the Court notes that Fractus already had an opportunity to depose Mr. Tim Rader on the topic of "evaluating the inclusion/exclusion of cellular connectivity in the Accused Products" and "the benefits" to ADT and its customers "from cellular connectivity in the Accused Products." (Dkt. No. 114 at 5.) To the extent that ADT later produces relevant documents on these issues that Fractus did not have a full and fair opportunity to confront Mr. Rader with at his deposition, such may give rise to more deposition time of Mr. Rader or another 30(b)(6) witness prepared to discuss such documents. However, absent such circumstances, the Court is not persuaded that Fractus is entitled to further 30(b)(6) deposition testimony that it could have, but did not, notice during the discovery period.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** Fractus's Motion to Compel (Dkt. No. 120.) Accordingly, it is **ORDERED**:

(1) ADT shall supplement its response to Fractus's Interrogatory No. 10 identifying the accurate documents and clarifying the nature of the purchase and installation data;

(2) ADT shall provide an additional 30(b)(6) deposition of no more than 3 hours regarding the supplemental response to Interrogatory No. 10 and any documents cited therein;

(3) ADT shall conduct a thorough search for documents that discuss the importance/benefits of cellular connectivity to consumers or to ADT and produce all relevant documents resulting from its searches; and

(4) to the extent that ADT maintains its position that it does not have any responsive documents related to the benefits of cellular connectivity, ADT shall file a declaration stating that no responsive documents are within its possession or control, and detailing its search efforts.

**So Ordered this**

**Apr 30, 2024**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE